**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lupe C. Hernandez,            )<br>                                          )<br>           Plaintiff,                 )<br>                                          )<br>vs.                                       )<br>                                          )<br>Michael J. Astrue, Commissioner of )<br> Social Security Administration, )<br>                                          )<br>           Defendant.              )<br>_____) | No. CV-07-828-PHX-GMS<br><br>**ORDER** |

Pending before this Court are the Motion for Summary Judgment of Plaintiff Hernandez (Doc. 16) and the Cross-Motion for Summary Judgment of Defendant Astrue (Doc. 26) following the Ninth Circuit's mandate (Doc. 42) to vacate this Court's Order (Doc. 31), which granted Plaintiff's motion and denied Defendant's cross-motion. In our previous Order, this Court remanded for further proceedings after finding that the Administrative Law Judge ("ALJ") erred at step five of the sequential evaluation process for determining disability. (Doc. 31). Without vacating this Court's determination of the ALJ's step five analysis, the Ninth Circuit remanded for consideration of step three as well. (Doc. 42). For the reasons set forth below, the Court vacates the ALJ's decision and remands the case for further proceedings consistent with this Order and the September 5, 2008 Order. (Doc. 31).

**BACKGROUND**

**I.   Factual Background**

The evidence contained in the administrative record includes the following. Hernandez, born January 17, 1956, was raised in the United States and has an eighth grade education. (R. at 20). Plaintiff repeated the fourth grade and received poor grades while in school. (R. at 222, 475). While Plaintiff's primary language is Spanish, English is her second language and she is able to communicate, read, and write in English. (*Id.*). Plaintiff has six children and lives with and cares for her four youngest children. (*Id.* at 25). Prior to the alleged disability date, Hernandez had work experience as an unskilled/medium prep cook and cafeteria cook. (*Id.* at 20).

Hernandez alleges that as of September 1, 1999, she became disabled as a result of diabetes mellitus, depression, anxiety, degenerative joint disease, and mental retardation. (*Id.*). Since her alleged disability onset date, Plaintiff has not engaged in substantial gainful activity. (*Id.* at 21). She reports pain, fatigue, depression, difficulty concentrating, and an inability to sit, stand or walk for any significant period. (*Id.*).

The ALJ's review of the medical evidence revealed that Hernandez has a history of type II diabetes mellitus, which was diagnosed in 2000, as well as a history of right knee pain, and a mood disorder. (*Id.*). Her diabetes was originally treated with oral medication and subsequently with insulin. (*Id.*). Plaintiff, who is approximately five feet two inches tall and weighs more than 280 pounds, is also morbidly obese. (*Id.* at 24). In addition, Plaintiff has a history of cholecystitis and was hospitalized for several days in 2002 and treated for an upper respiratory infection, chest pain, and back pain. (*Id.* at 22).

Plaintiff has been examined by three independent psychologists at the request of the State agency. In October 2000, psychologist Daniel Watkins examined Hernandez and found that she appeared to be suffering from ongoing adjustment problems to her medical condition and reduced financial circumstances. (*Id.* at 25). Watkins concluded that Hernandez appeared to retain the cognitive capacity to understand, remember, and carry out concrete instructions to simple or moderate complexity; to maintain attention and concentration for one hour plus;

1  to make simple decisions; to ask questions and request assistance; to take ordinary
2  precautions in travel to unfamiliar places; to interact appropriately with the general public;
3  and to maintain socially appropriate behavior as long as she was not asked to perform beyond
4  her cognitive capacity. (*Id*.). He further noted that Hernandez's ability to respond
5  appropriately to stressors, to maintain emotional stability, and to demonstrate reliability and
6  consistency were moderately impaired as were her common sense judgement skills. (*Id*.).
7  While she appeared capable of dealing with the public on a casual short-term basis, Watkins
8  concluded that she may have difficulty interacting on a sustained basis. Even though he did
9  not test Plaintiff's cognitive capacity, he estimated that she was likely functioning at a
10 borderline to low average range. (*Id*.).

11      In July 2002, psychologist Elliot Salk also examined Hernandez and diagnosed her
12 with major depressive disorder, single episode, chronic for the past year, moderate and a
13 moderate anxiety disorder. (*Id*.). Based on his examination, Salk concluded that Hernandez
14 had a very good ability to understand, remember and carry out simple job instructions,
15 maintain her personal appearance, relate predictably in social situations, follow work rules,
16 function independently, and maintain attention and concentration. (*Id*.). She also exhibited
17 a fair ability to demonstrate reliability, behave in an emotionally stable manner, understand,
18 remember and carry out detailed, but not complex job instructions, relate to co-workers, deal
19 with the public, use judgment, interact with supervisors, and deal with work stresses. (*Id*.).

20      In October 2002, a third psychologist, David Biegen, examined Hernandez and
21 diagnosed her with mild mental retardation and major depressive disorder, moderate. (*Id*. at
22 21). His diagnosis was based on intelligence aptitude testing on Hernandez, which yielded
23 a Full Scale Intelligence Quotient (IQ) of 64, a Verbal IQ of 66, and a Performance IQ of 68.
24 (*Id*.). These scores placed Hernandez in the mild mental defective range of general
25 functioning intelligence. (*Id*.).

26      At Plaintiff's hearing, medical expert Edward Jasinski testified that the IQ scores
27 reported by Biegen were invalid because he believed Plaintiff's primary language is not
28 English. (*Id*. at 21). Jasinski reported that in such cases the IQ scores tended to run 10 to 15

points below actual abilities. (*Id.*). Further examination of Plaintiff revealed that she has spent her entire life in the U.S., was educated in English, and speaks English with her daughter and grandchild, with whom she lives. (*Id.* at 484–85). After learning this information, Jasinski noted that he would consider the IQ scores "more valid." (*Id.* at 485). Jasinski concluded that the record supported a diagnosis of mood disorder but not of mental retardation. (*Id.* at 21, 477).

To the extent more specific evidence in the record is relevant to reviewing the ALJ's opinion, those facts are set forth in more detail below.

## II.     Procedural Background

On March 27, 2000, Hernandez filed an application for Supplemental Security Income, alleging a disability onset date of September 1, 1999. (R. at 19). Hernandez's claim was denied both initially on July 12, 2000, and upon reconsideration. (*Id.*). Plaintiff then appealed to an ALJ. (*Id.*). The ALJ issued an unfavorable decision, but that decision was subsequently reversed by the Appeals Council. (*Id.*). On remand, the ALJ issued a partly favorable decision to the effect that Hernandez had been disabled as of January 16, 2006. (*Id.* at 20).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (R. at 20). The ALJ found that the Plaintiff

---

[1]The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof

- 4 -

had established a prima facie case of disability by showing that she was not engaged in substantial gainful activity, that her disability was severe, and that she was unable to perform any relevant past work. (R. at 29). At step five, however, the ALJ concluded, based on the testimony of a vocational expert, that there were a significant number of jobs in the national economy that Plaintiff could have performed between September 1, 1999, and January 15, 2006. (*Id*. at 28–29). On that basis, the ALJ concluded that Hernandez was not disabled during that period. (*Id*. at 30). The ALJ further concluded that Plaintiff became disabled on January 16, 2006, pursuant to Medical-Vocational Rule 201.09.[2] (*Id*.).

The Appeals Council declined to review the decision. (R. at 8). Plaintiff filed the complaint underlying this action on April 20, 2007, arguing that she was physically and mentally disabled as of September 1, 1999, rather than January 16, 2006. (Doc. 1). Plaintiff filed a Motion for Summary Judgment on December 20, 2007, and Defendant filed a Cross-Motion on March 31, 2008. (Doc. 16, 26).

On September 5, 2008, this Court granted Plaintiff's motion and denied Defendant's cross-motion. (Doc. 31). We ordered the ALJ's decision vacated and remanded for further proceedings to reconcile the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 31). On November 7, 2008, Plaintiff filed a notice of appeal to the Ninth Circuit. (Doc. 35). The Ninth Circuit vacated this Court's

---

> shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] Medical-Vocational Rule 201.09 provides that a claimant is disabled if he is closely approaching advanced age, has a limited education, and is unskilled in terms of previous work experience. The ALJ determined that Hernandez entered the "closely approaching advancing age" category on January 16, 2006. (R. at 29).

- 5 -

order and remanded for sequential consideration of the alleged errors, in particular a determination of whether the ALJ erred at the third step. (Doc. 42). We requested supplemental briefing from the parties regarding whether the ALJ erred at step three and what, if any, remedy is appropriate. (Doc. 43).

## DISCUSSION

### I.    Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court "may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge

1  the propriety of [administrative] action solely by the grounds invoked by the agency" and
2  stating that if "those grounds are inadequate or improper, the court is powerless to affirm the
3  administrative action"). Even if the ALJ erred, however, "[a] decision of the ALJ will not
4  be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
5  2005).

**II.    Analysis**

Plaintiff argues that the ALJ erred at: (1) step three by not finding that Hernandez's impairments met or equaled the requirements of a listed impairment under 12.05(C) and/or 12.05(D), and (2) step five by not reconciling the conflict between the vocational expert's testimony and the DOT's statement. (Doc. 21, 46).[3]

If a claimant has an impairment or combination of impairments that meets or equals one found in the Listing of Impairments, then the ALJ must find the claimant disabled. 20 C.F.R. § 404.1520(d). For a claimant's impairment to match a listing, it must, for a period of twelve continuous months, "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); 20 C.F.R. pt. 404, subpt. P, app'x. 1 (stating the twelve-month rule). Similarly, for a claimant to show that an impairment is "equivalent" to a listed impairment, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. *Zebley*, 493 U.S. at 531 (citing 20 C.F.R. § 416.926). Because more than a "boilerplate finding" is required in making this determination at step three, *Lewis*, 236 F.3d at 512, the ALJ "must adequately explain his [or her] evaluation of alternative tests and the combined effect of the impairments," *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). The ALJ is required, however, only "to discuss

---

[3] The Court only addresses Plaintiff's step three argument because the error alleged at step five was decided in a previous Order, entered September 5, 2008. (Doc. 31, *vacated on other grounds*).

- 7 -

and evaluate the evidence that supports his or her conclusion[,]" but not necessarily "under the heading 'Findings.'" *Lewis*, 236 F.3d at 513. Therefore, even if not in the section expressly addressing step three, an ALJ does not err if he or she, for example, adequately discusses relevant "subjective symptoms, medical and treatment history, impressions and diagnosis from . . . physicians, as well as information about [the claimant's] daily activities and living situation." *Harris v. Astrue*, 2009 WL 801347 at *7 (N.D. Cal. Mar. 25, 2009).

The ALJ concluded that Hernandez's impairments did not meet or equal any listed impairment, specifically considering Listing 1.02 (major dysfunction of a joint), 9.08 (diabetes mellitus), and 12.05 (mental retardation). (R. at 22). Plaintiff, however, only challenges the ALJ's determination under 12.05, specifically subsections C and D. (Doc. 21, 46).

Listing 12.05 in 20 C.F.R. Appendix 1 to Subpart P of Part 404 defines mental retardation, which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.[4]

...

C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D.   A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1.   Marked restriction of activities of daily living; or
    2.   Marked difficulties in maintaining social functioning; or
    3.   Marked difficulties in maintaining concentration, persistence, or pace; or
    4.   Repeated episodes of decompensation, each of extended duration.

---

[4] Plaintiff does not argue that her impairments meet or equal the severity requirements of either Listing 12.05(A) or 12.05(B).

The ALJ determined that Hernandez does not suffer from mental retardation, as defined under Listing 12.05. (R. at 21). As an initial requirement of either Listing 12.05(C) or 12.05(D), Plaintiff must establish that she has a valid verbal, performance, or full scale IQ between 60 and 70. To this end, Plaintiff raises evidence from psychologist Biegen, who reported that Hernandez's Intelligence aptitude testing yielded a Full Scale Intelligence Quotient (IQ) of 64, a Verbal IQ of 66, and Performance IQ of 68. However, the ALJ explained that she found Biegen's testimony unpersuasive because of the testimony of Dr. Jasinski, a medical expert who explained that the IQ scores reported by Biegen were invalid because Hernandez's primary language is not English. (R. at 21). The ALJ found persuasive Jasinski's testimony that it is well accepted that the results of standardized Intelligence Aptitude Tests are invalid when administered with individuals whose primary language is not English. (*Id.*). In such cases, Jasinski testified, and the ALJ agreed, IQ scores tend to run 10 to 15 points below actual abilities. (*Id.*). Accordingly, the ALJ adopted Jasinski's conclusion that Hernandez did not meet the criteria for a diagnosis of mental retardation. (*Id.*).

On appeal, Plaintiffs point out that after hearing Hernandez's testimony about her English language usage, Dr. Jasinski testified that he would find Plaintiff's IQ scores, as measured by Biegen, to be "more valid," and that if the scores were assumed valid, Hernandez's impairments would equal Listing 12.05(C). (Doc. 46). Nevertheless, nothing from the record definitively demonstrates that this resulted in Dr. Jasinksi changing his opinion that the test was, in the end, invalid in light of Plaintiff's primary language being Spanish. It is possible that the ALJ could have rationally interpreted Jasinski's statement to mean that while more valid than what he considered them before learning the extent of Hernandez's English skills, the scores still remained invalid because Spanish is, as Hernandez confirmed, her primary language. (R. at 474, 485). However, because the ALJ does not explicitly address Dr. Jasinski's equivocal testimony, in particular his ambiguous statement with respect to the IQ scores being "more valid," the validity of the scores remains unclear to this Court. Accordingly, we remand for consideration of whether Hernandez's IQ

1    scores were valid in light of Dr. Jasinski's ambiguous testimony. *See Andrews*, 53 F.3d at
2    1039 (finding, in part, that the ALJ is responsible for resolving ambiguities).

3    Despite finding that the IQ scores were invalid, the ALJ nevertheless went on to
4    consider if Hernandez suffered from any significant work-related limitation of function for
5    the purposes of 12.05(C) or any of the four adaptive functioning criteria under 12.05(D).
6    With respect to the work-related limitation of function under 12.05(C), the ALJ adopted Dr.
7    Jasinski's testimony that Hernandez "had the ability to respond appropriately to supervision
8    and co-workers." (R. at 22). He noted that even though her "primary job duty should not
9    require social interaction" and that she should be "restricted from complicated/detailed
10   work," Hernandez "could use basic judgment and sustain basic concentration through an
11   eight hour workday and maintain pace." (*Id.*). He also noted that her tasks did not have to be
12   repetitive in nature so long as they were not constantly changing either. (*Id.*). With respect
13   to the four criteria under 12.05(D),  the ALJ was persuaded that Plaintiff had a *mild*
14   restriction of daily activities, *moderate* restriction in social functioning, *moderate* difficulties
15   maintaining concentration, persistence and pace, and no evidence of episodes of
16   decompensation of extended duration. (R. at 22, 25–26). Thus, the ALJ concluded that
17   Hernandez did not satisfy the 12.05(D) criteria, which require *marked* difficulty or restriction
18   with respect to the first three adaptive functioning indicators, and repeated episodes of
19   decompensation, each of extended duration.

20   In addition to considering Dr. Jasinski's testimony in her step three analysis, the ALJ
21   noted that examining psychologists Watkins and Salk estimated that Hernandez's intelligence
22   fell in the borderline to low average range, and that her medical doctors have not reported
23   that she suffers from mental retardation. (R. at 22). The ALJ took account of the fact that
24   Hernandez has been able to care for her children, in particular the four youngest with whom
25   she lives. (R. at 22, 25). Plaintiff also "performs her self-care skills independently, cleans the

- 10 -

1  house, waters the plants, prepares meals, shops and does light laundry." (R. at 25).[5] She
2  spends leisure time visiting friends, watching television, and visiting with her mother. (*Id.*).
3  Further, Hernandez has sufficient concentration to be able to drive and manage bills. (*Id.*).
4  The ALJ also observed that Hernandez did not demonstrate any difficulty attending the
5  proceedings or answering questions during the hearing. (R. at 26).

6  Nevertheless, the Ninth Circuit suggests that the fact that Hernandez repeated the
7  fourth grade, received poor grades in school, and did not attend high school was evidence
8  from which the ALJ *could* conclude that Plaintiff met the requirements of Listing 12.05.
9  (Doc. 42). The Ninth Circuit noted that these characteristics could suggest an early onset of
10 low mental functioning, specifically a manifestation of mental impairments before age 22,
11 as required by Listing 12.05.  Because the ALJ does not consider whether these
12 characteristics satisfy the work-related limitation of function requirement under 12.05(C) or
13 the adaptive functioning criteria under 12.05(D), the Court remands for further proceedings.
14 Specifically, we remand for a determination of whether the requirements of 12.05(C) and/or
15 (D) are met in light of elements that could suggest that Plaintiff's "subaverage general
16 intellectual functioning with deficits in adaptive functioning initially manifested during [her]
17 developmental period."

18 **III.   Remedy**

19 Having decided to vacate the ALJ's decision, the Court has the discretion to remand
20 the case either for further proceedings or for an award of benefits. *See Reddick v. Chater*, 157
21 F.3d 715, 728 (9th Cir. 1998). The rule in this Circuit is that a remand for an award of
22 benefits is appropriate in cases where there are no outstanding issues that must be resolved
23 and it is clear from the record that the ALJ would be required to award benefits. *See id.* In
24 this case, the ALJ erred at step three by not clarifying whether Hernandez's IQ scores were
25 valid in light of Dr. Jasinski's equivocal testimony, and whether the criteria under 12.05(C)

---

[5] It was reasonable for the ALJ to be unpersuaded by the inconsistent statements of Plaintiff's daughter, friend, and neighbor regarding Hernandez's social functioning when the inconsistencies were combined with relatively weak medical evidence as well. (R. at 23).

- 11 -

or (D) were met in light of evidence that could suggest early onset of low mental functioning. Because it is uncertain how the ALJ will resolve these issues, it is not clear from the record that the ALJ would be required to award benefits. Therefore, the Court will remand the case for further proceedings consistent with this Order.

## CONCLUSION

The ALJ's step-three finding is unclear with respect to Listing 12.05. It is unclear to the Court whether Plaintiff's IQ scores are valid in light of Dr. Jasinski's equivocal testimony. It is also unclear to the Court whether the criteria under 12.05(C) and/or (D) are met in light of evidence which could suggest Plaintiff's early maladaptive functioning and low intellectual functioning, including repetition of the fourth grade, poor grades, and achieving no higher than an eighth grade education.

Furthermore, consistent with the Court's September 5, 2008 Order, the ALJ made a legal error at step five by failing to inquire into and explain conflicts between the vocational expert's testimony and the DOT's statement that certain jobs required physical abilities beyond Plaintiff's residual functional capacity. (Doc. 31, *vacated on other grounds*). Because both errors were not harmless, the ALJ's decision must be vacated and the case must be remanded for further proceedings.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **VACATED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **REMAND** for further proceedings.

DATED this 24th day of November, 2010.

_____
G. Murray Snow
United States District Judge